Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6560 | **DATE** | March 8, 2001 |
| **CASE TITLE** | Emery et al v. Sprint Spectrum & Sprint Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion to dismiss all counts of complaint [5-1] is granted as to the plaintiff's RICO claims. The court declines to exercise supplemental jurisdiction over the state law claims and remands the case to the Circuit Court of Cook County. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| X | Notices MAILED by judge's staff. | | MAR 13 2001 date docketed | 12 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to _____ | FOR DOCKETING | date mailed notice | |
| KAM | courtroom deputy's initials | '01 MAR 12 PM 3:44 Date/time received in central Clerk's Office | KAM mailing deputy initials | |

(Reserved for use by the Court)

00-6560.011-MEV                                              March 8, 2001

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RICHARD EMERY, individually and on )
behalf of all the members of the )
class of persons similarly )
situated, )
)
               Plaintiff, )
)
v. ) No. 00 C 6560
)
SPRINT SPECTRUM L.P., a foreign )
corporation, and SPRINT )
CORPORATION, a foreign corporation,)
)
              Defendants. )

DOCKETED
MAR 1 3 2001

## MEMORANDUM OPINION

Before the court is defendants' motion to dismiss all counts of plaintiff's complaint. For the reasons explained below, the motion is granted as to the plaintiff's RICO claims, and the case is remanded to the Circuit Court of Cook County.

## Background

The plaintiff, Richard Emery, brought this class action lawsuit in state court against the defendants, Sprint Spectrum L.P., and its parent corporation, Sprint Corporation, alleging racketeering, breach of contract and consumer fraud, and seeking

reimbursement for unlawful charges under the "money had and received" doctrine.

The following facts, drawn from the plaintiff's Second Amended Complaint ("complaint"), are taken as true for the purposes of this motion. Defendant Sprint Corporation provides wire line telecommunication services to consumers throughout the United States, and it's wholly owned subsidiary, defendant Sprint Spectrum, operating under the trade name "Sprint PCS," provides mobile phone services. Thirty-eight states permit their municipalities to charge a local tax[1] on the revenue generated by the sale of mobile phone services to consumers. To identify whether a customer owes local taxes, Sprint Spectrum looks at the customer's zip code to ascertain whether the billing addresses fall within the geographical boundaries of the municipality. Some municipalities allow Sprint Spectrum to retain an administration fee for collecting the local taxes, usually about 2% of the taxes collected.

The plaintiff alleges that Sprint Spectrum's methodology for identifying city-residents was so flawed that as many as 25% of its customers were billed for and paid local taxes that they did not owe. The plaintiff himself was charged Aurora city taxes even

---

[1] These taxes may include "local utility, and/or sales tax, and/or municipal infrastructure tax, and/or local general receipts taxes, and/or transaction privilege tax or other local taxes." Complaint, pp. 2-3.

though he resided outside the Aurora city limits and owed no tax. He further alleges that Sprint Spectrum knew that its methodology produced inaccurate results and caused the misidentification of thousands of customers, but it did not correct the problem, alert consumers to the problem, or refund all of the improperly collected taxes. Moreover, Sprint Spectrum inserted a forfeiture clause into its contract for services that allows it to retain money collected from a billing error if the customer does not protest the incorrect charges within 30 days of receiving the bill. Sprint Spectrum has asserted this clause as a defense to legal proceedings and to class complaints brought to its customer service department. According to the plaintiff, these acts add up to mail fraud because Sprint Spectrum processed and mailed billing statements with false charges to customers over a period of two years.

Because the racketeering charges are based on the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961, et seq., the defendants removed the case to this court. This motion to dismiss all counts followed.

## Analysis

### A. Count I: Racketeering

Alleging violations of sections 1962(a), (c), and (d) of RICO, the plaintiff identifies the offense of mail fraud as the predicate

- 4 -

"racketeering activity" which brings the statute into play. See 18 U.S.C. 1961(1)(B). The defendants argue, among other things, that the charge based on § 1962(a) must be dismissed for lack of standing; the § 1962(c) charge must be dismissed for failure to allege a RICO "person" separate and distinct from the RICO "enterprise"; and the § 1962(d) claim for conspiracy must be dismissed because it depends on the § 1962(a) and (c) claims, neither of which is viable.

1. **Section 1962(a)**

That plaintiff alleges that the defendants violated section 1962(a), which states, in pertinent part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

The private right of action to enforce this section of RICO is found in § 1964(c). Persons must show they were "injured by reason of" a violation of § 1962 to have standing to bring a civil suit.[2] See Fogie v. THORN Americas Inc., 190 F.3d 889 (8th Cir. 1999) (affirming district court's dismissal of § 1962(a) claim because

---

2/ "(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee...."

the plaintiff had no standing). The defendant argues that the plaintiff does not have standing to bring a § 1962(a) claim because he has not alleged any injury from the "use" or "investment" of racketeering income, but only an injury from the predicate offense of mail fraud. The plaintiff agrees that the injuries he claims "are a direct result of the predicate offenses by defendants." Response at 6.

The only question, then, is whether the plaintiff states a claim under § 1962(a) when the only alleged injuries arise out of the predicate offense alone, or whether the plaintiff must allege a separate injury resulting from the use of the racket-derived income. The Seventh Circuit has not decided the issue, and the judges in this district are split, see Chamberlain Mfg. Corp. v. Maremont Corp., No. 90 C 7127, 1993 WL 535420 at *12 & n. 8 (N.D. Ill. Dec. 19, 1993) (listing cases in this district which have considered the question), as are the other circuits. See Fogie, 190 F.3d at 894 (collecting cases). However, the majority view is that an injury resulting solely from the predicate offense is insufficient, with eight of the nine circuit courts to consider the question holding that "§§ 1962(a) and 1964(c) limit standing only to plaintiffs who have suffered injury from the use or investment of the racketeering income." Fogie, 190 F.3d at 894-95 (listing cases from the Second, Third, Fifth, Sixth, Ninth, Tenth, and D.C.

Circuits and noting that only the Fourth Circuit disagrees); see also Chamberlain, 1993 WL 535420 at *12 & n. 8 (noting that in the Northern District of Illinois the majority approach is to require an injury from the use of racketeering funds).

We are persuaded that the prevailing opinion is correct for two reasons. Section 1962(a) does not itself prohibit the predicate acts forming the basis of "racketeering." It imposes liability for certain <u>uses</u> of income derived from racketeering activities. To state a claim that one has been "injured by reason of" a violation of § 1962(a), therefore, one must show that the injury flowed from the prohibited <u>use</u> of racket derived income. See Fogie, 190 F.3d at 895. The Fogie court articulated another reason: to permit liability for predicate acts under § 1962(a) would unleash "almost unlimited civil liability" and, therefore, render meaningless the limited prohibitions found in § 1962(c). Id. at 895-96.

> If § 1962(a) were read to allow any person harmed by a predicate act to bring a civil suit under RICO, a defendant could be held liable for violating RICO when that defendant engaged in a predicate act, whether or not that defendant also conducted or participated in the conducting of a RICO enterprise. The restriction of § 1962(c) liability to those in management positions would be meaningless. Reading § 1962(a) so broadly that it renders § 1962(c) meaningless runs contrary to the interpretive canon that statutes should be read to give "each word some operative effect." [Citations omitted] To prevent almost unlimited civil liability plainly contrary to the statutory scheme of § 1962, standing to

bring a civil suit for a violation of § 1962(a) must be limited to those plaintiffs whose injuries flow from the use or investment of the racketeering income.

Id.

The plaintiff does not address this case law at all, much less urge us to adopt the minority view. Instead, he cites Haroco v. American Nat'l Bank & Trust Co. of Chicago for the proposition that the Seventh Circuit has upheld civil RICO claims where "the only apparent injuries were those directly resulting from the predicate offense." 747 F.2d 384, 397 (7th Cir. 1984), aff'd on other grounds by 473 U.S. 606 (1985). This argument is without merit. Haroco considered liability under subsection (c) of § 1962 only, specifically excluding from discussion the provisions of subsection (a). Id. at 387. Moreover, ten years after Haroco was decided, the Seventh Circuit stated in Vicom, Inc. v. Harbridge Merchant Serv., Inc., 20 F.3d 771, 779 n. 6 (7th Cir. 1994), that it had yet to consider whether an injury from the predicate act alone is sufficient to state a claim under § 1962(a).

As pointed out previously, the plaintiff acknowledges that his alleged injuries resulted from the predicate acts.[3] Because he

---

[3] The complaint contains the allegation that "[d]efendant invested money in the enterprise with the intent and purpose of furthering the racketeering activities of the enterprise. Defendant received revenues from the enterprise which were acquired from the enterprises [sic] pattern of racketeering activity." Compl., pp. 20, 21. The plaintiff does not argue that this is sufficient to meet the "income use" test articulated above, nor indeed do we believe such an argument would help his case. As the Fogie court pointed out, the injury from

alleges no injury resulting from the use of racket-derived income, we hold that he has not stated a claim under § 1962(a).

## 2. Section 1962(c)

The plaintiff's second claim is brought under § 1962(c), which makes it unlawful

> for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs though a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). It is well-settled that under § 1962(c) the RICO "'person' must participate in the operation or management of the enterprise itself ... and must be separate and distinct from the enterprise." Richmond v. Nationwide Cassel, L.P., 52 F.3d 640, 646 (7th Cir. 1995) (citing cases). Moreover, when the RICO person conducts his <u>own affairs</u> through a pattern of racketeering activity, there is no enterprise and no liability under § 1962(c). Id. (affirming dismissal of complaint where the plaintiff failed to show how the "persons" conducted the affairs of either of the alleged enterprises rather than their own).

---

the use of racket-derived income must be <u>separate and distinct</u> from the injuries caused by the predicate acts. 190 F.3d at 896. If it were otherwise, corporations would always be liable for the predicate acts themselves, because over the long-term corporations generally reinvest their profits. Id.

The plaintiff identifies Sprint Spectrum as the RICO person[4] and Sprint Corporation as the enterprise.[5] The defendants argue that the alleged RICO person is not sufficiently separate and distinct from the enterprise because the person is the wholly owned subsidiary of the enterprise. They cite three Seventh Circuit cases which declined to extend RICO liability under § 1962(c) to circumstances where the RICO person and enterprise consisted of different divisions or subsidiaries of the same corporation. See Emery v. American Gen. Fin., Inc., 134 F.3d 1321, 1323-24 (7th Cir. 1998) (stating that it is not enough that the predicate acts "were committed by a firm that has agents or affiliates"); Fitzgerald v. Chrysler Corp., 116 F.3d 225, 227 (7th Cir. 1997) (liability could not flow where the "person" was the parent corporation, Chrysler, and the "enterprise" consisted of the parent corporation, its subsidiaries, and agents); Richmond, 52 F.3d at 646 (the plaintiff did not state a claim where the RICO acts began and ended with the

---

[4] Under RICO, a "person" need not be a natural person. 18 U.S.C. § 1961(3); Fitzgerald v. Chrysler Corp., 116 F.3d 225, 226 (7th Cir. 1997) (noting that Chrysler is person within the meaning of the Act).

[5] The complaint could be read to allege that Sprint Corporation is also a RICO person and enterprise. However, the plaintiff did not argue this in his Response, perhaps because Seventh Circuit case law clearly disallows a corporate parent to function both as the RICO person and the enterprise. See infra A,2. Since the plaintiff has not raised this issue, we will not address it separately.
The plaintiff also pled that the RICO enterprise consisted of Sprint Corporation along with "various individuals, partners, corporate officers, board of directors and employees" of Sprint. He does not mention these individuals in his Response and we do not believe inclusion of these persons would alter the inquiry or the result.

alleged RICO "persons" -- parent and partial subsidiary -- and no enterprise beyond them was properly alleged). They also quote Bachman v. Bear, Stearns & Co., for the proposition that a "firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself." 178 F.3d 930, 932 (7th Cir. 1999).[6]

However, an earlier Seventh Circuit decision did recognize a subsidiary as the RICO person and the parent corporation as the enterprise. See Haroco, 747 F.2d at 402. In that case, the complaint alleged that a subsidiary had violated § 1962(c) by conducting the affairs of its parent corporation through a pattern of racketeering activity. Id. Noting particularly that a subsidiary corporation is "certainly a legal entity distinct from its parent," the Court concluded that the plaintiff stated a claim under § 1962(c). Id.

The defendants acknowledge Haroco as a snag in their case, but maintain that the more recent statements in Fitzgerald and Emery represent a change in the Seventh Circuit's position since Haroco. We believe the defendants paint with too broad a stroke. The cases

---

[6] The Court made this statement in the context of explaining why it discussed the role of the CEO and Vice President of the corporations without mentioning the corporations themselves: "To add the corporations to Snyder and Ferrell, their employees, is thus to add nothing." Bachman, 178 F.3d at 932. Ultimately, the Court determined that the corporations at issue were enterprises, but that the defendant did not exercise any control over the corporations. Id. at 932-33.

defendants point to must be taken in the context of the facts presented: the RICO person was the parent corporation, and the RICO enterprise was the parent corporation together with its subsidiaries and agents. Power over the subsidiary is inherent in a corporate parent's relationship with its wholly owned subsidiary. Emery, 134 F.3d at 1324. The situation presented in this case differs from Haroco because a subsidiary does not control the parent: "the problem with parent-person and subsidiary-enterprise pleading is that subsidiaries conduct the affairs of their parent ... not vice versa." Majchrowski v. Norwest Mortgage, Inc., 6 F. Supp. 2d 946, 956 (N.D. Ill. 1998) (discussing Emery and Fitzgerald); see also Williams v. Ford Motor Co., 11 F. Supp.2d 983, 988 (N.D. Ill. 1998) (reading the Richmond-Fitzgerald-Emery line of cases narrowly and finding that they apply in the specific situation where the RICO person is the parent or umbrella corporate entity).

Moreover, the three recent Seventh Circuit cases specifically discussed or cited Haroco. Indeed, Fitzgerald discussed Haroco as presenting circumstances coming close to the RICO paradigm, for example, where

> the criminal seizes control of a subsidiary of a corporation and perverts the subsidiary into a criminal enterprise that manages in turn to wrest sufficient control or influence over the parent corporation to use it to commit criminal acts ... Our decision in Haroco

> allowed the subsidiary to be deemed the RICO "person" conducting the affairs of its parent through a pattern of racketeering activity....

Fitzgerald, 116 F.3d at 227; see also Emery, 134 F.3d at 1324 (distinguishing the facts before it from Haroco). The only infirmity of Haroco that the court pointed out was that it did not require that the "subsidiary participate in the control of the parent," as the Supreme Court later required in Reves v. Ernst & Young, 507 U.S. 170 (1993), a requirement we will address momentarily. See Fitzgerald, 116 F.3d at 227. Richmond also cited Haroco for the proposition that "a subsidiary that had conducted the affairs of its parent corporation could be found liable under § 1962(c)." Richmond, 52 F.3d at 646. Therefore, the existence of a subsidiary-parent relationship between the RICO person and enterprise does not create an automatic bar to liability under § 1962(c).

The issue, however, is not resolved simply by determining that the subsidiary may operate as the RICO person and the parent corporation as the enterprise. The crux of a RICO violation is criminality, and the circumstances must bear "at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate ... firm and uses the firm as the instrument of his criminality." Emery, 134 F.3d at 1324. Therefore, there is no liability under § 1962(c) unless the

plaintiff shows that "the defendant[] conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." Reves, 507 U.S. at 185 (emphasis in original). The Supreme Court has held that the verb "conduct" requires some degree of direction over the enterprise's activities, and the word "participates" requires some part in that direction. Id. at 177. To put it another way, the plaintiff must show that the parent corporation "somehow made it easier to commit or conceal the fraud of which the plaintiff complains." Brannon v. Boatmen's First Nat. Bank of Oklahoma, 153 F.3d 1144, 1147-48 (10th Cir. 1998) (quoting from Emery, 134 F.3d at 1324, and discussing Seventh Circuit case law in detail).

We turn, then, to the plaintiff's complaint in search of allegations that Sprint Spectrum participated in the operation of the enterprise, Sprint Corporation. According to the complaint, the mail fraud was conducted entirely by Sprint Spectrum. It devised the inaccurate method for ascertaining whether a customer resides within city boundaries for purposes of determining liability for the local tax; it knew that the method misidentified thousands of consumers; and it prepared and filed tax returns with the appropriate municipalities. Compl. pp. 3-5. As to the key act of mail fraud, the complaint is crystal clear that it was Sprint Spectrum that processed and sent out incorrect billing statements:

> Sprint Spectrum, L.P. bills and collects these charges for mobile phone services provided consumers through its centralized computer systems operated and maintained by Spring Spectrum, L.P., its officers and employees at its corporate headquarters in Missouri and through contracts with third party vendors negotiated, entered into and maintained by Sprint Spectrum, L.P. its officers and employees.

Id. at 2 (emphasis added). Also, the contract for service appears to be between Sprint Spectrum and the customer. See Compl., pp. 17-18, and appended contract. There is no mention of Sprint Corporation in the contract. According to the complaint, Sprint Spectrum inserted a forfeiture clause into the contract, and it was Sprint Spectrum's customer service department that used the clause as a defense to complaints brought to its attention.

The plaintiff argues that it is sufficient that Sprint Corporation delegated its wireless services business to Sprint Spectrum[7] and that the racketeering activity financed the corporate group's operations. Response, at 6, 7. Similar circumstances were presented in Brannon v. Boatmen's First Nat. Bank of Oklahoma, where the plaintiff alleged that a bank holding company, Bancshares, had delegated responsibility to its subsidiary, Boatmen's, for servicing certain consumer credit obligations, and

---

[2]/ The plaintiff also states in his brief that Sprint Spectrum "took control of wireless services aspect of parent's business," but the complaint alleges a different locus of control: "Sprint Spectrum, L.P. was formed by Sprint Corporation to implement and carry out its strategy to provide wireless communication services to the public and businesses." Compl. p. 12.

that the revenue and profits from the racketeering activity inured to the benefit of Bancshares. Brannon, 153 F.3d at 1148 (another allegation was that Bancshare's financial statement, which reflected this revenue, was issued to the public for the purpose of raising capital that was, in turn, used to fund its subsidiaries, including the defendant). The 10th Circuit determined that these allegations were insufficient:

> These allegations do nothing more than define a legitimate corporate and financial relationship between Boatmen's and it's holding company.
>
> It is irrelevant to plaintiffs' RICO claim against Boatmen's that the responsibility for organizing and servicing consumer credit obligations was delegated to it by Bancshares. This allegation does not show that the subsidiary was engaged in the conduct of its parent's affairs; to the contrary, it suggests that the handling of consumer credit obligations was Boatmen's affair. Moreover, plaintiffs' allegations that Boatmen's revenue and profits benefitted Bancshares establish nothing more than that the bank holding company benefitted financially from the success of its subsidiary - a fact that on its own is unrelated to RICO liability.
>
> Thus, the complaint alleges no activity on the part of Bancshares that might reasonably be understood to implicate it in the scheme attributed to Boatmen's.

Id. at 1148-49. Here, too, absent any allegation that Sprint Spectrum used Sprint Corporation to further its acts of criminality, we can only conclude that Sprint Spectrum was simply conducting its own affairs. See id.; see also Richmond, 52 F.3d at 647 (refusing to extend liability to defendants because the

plaintiff's "claim begins and ends with the fraud allegedly committed by" the RICO persons).

The plaintiff directs our attention to Majchrowski v. Norwest Mortgage, Inc., 6 F. Supp.2d 946, a case which presented allegations similar to those presented in Brannon and here. In that case, Judge Castillo reached the opposite conclusion from Brannon and held that the plaintiff survived the motion to dismiss, but he did so with marked reservation:

> [T]he case before us comes dangerously close to what Fitzgerald might characterize as an "absurd application" of the RICO statute. It requires us to equate exercising delegated authority that produces some financial benefit to affiliated corporate entities with directing those companies' affairs. This is a logical stretch, to say the least. In addition, we are troubled by the insertion of RICO claims into what would otherwise be a garden-variety breach-of-contract or (perhaps) fraud case.

Id. at 961. We appreciate Majchrowski's careful analysis, but we are persuaded more by the court's misgivings than by its ultimate holding. As the Brannon court put it: the fact that a parent corporation benefits financially from the success of its subsidiary simply "define[s] a legitimate corporate and financial relationship between" a subsidiary and parent, and is a fact that "on its own is unrelated to RICO liability." Brannon, 153 F.3d at 1148-49. Parent corporations usually benefit financially from the success of their subsidiaries. If this alone were sufficient to meet the requirement that the RICO person "participate in the conduct" of

the enterprise's affairs, then we could simply assume, as Haroco did, that subsidiaries conduct the affairs of their parent corporations. See Haroco, 747 F.2d at 402-03. However, Fitzgerald clearly stated that Haroco had been limited by the Supreme Court in that respect. Fitzgerald, 116 F.3d at 227 (stating that Reves imposed the requirement that the subsidiary participate in the control the parent).

We agree with Brannon's analysis, and find that the plaintiff has failed to plead facts which satisfy the requirement of § 1962(c) that Sprint Spectrum participated in conducting the affairs of the enterprise, rather than simply its own affairs.

### 3. Section 1962(d)

Section 1962(d) makes it unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Therefore, in order to state a violation of subsection (d) for conspiracy to violate subsection (a), (b), or (c), the plaintiff must establish that the defendants violated (or were intending to violate) one of those subsections. Because we have found deficient the plaintiff's claims that the defendants violated RICO subsections (a) and (c)[8], we dismiss the § 1962(d)

---

[8] To conspire to violate subsection (c) the defendant must "facilitate the activities of the operators or managers to whom subsection (c) applies. One must knowingly agree to perform services of a kind which facilitate the

claim, as well. See Lighting Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993) ("any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

B. **State Law Claims**

The plaintiff's remaining claims are all based on state law. This court's original jurisdiction over the case was based on the federal question presented by the plaintiff's RICO claims. Because we have dismissed the RICO claims, we may decline to exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3); Richards v. Combined Ins. Co. of America, 55 F.3d 247, 253 (7th Cir. 1995) (affirming district court's dismissal of supplemental state claims when RICO claim was dismissed). As we have not devoted time or resources to the state law claims, no judicial economy would result from retaining jurisdiction over those claims. Therefore, we exercise our discretion to decline

---

activities of those who are operating the enterprise in an illegal manner. Brouwer v. Raffensperger, Hughes & Co., 199 F.3d 961, 967 (7th Cir.), cert. denied, 120 S.Ct. 2688 (2000) (emphasis added) (also stating that "one cannot conspire to violate subsection (c) by agreeing that somehow an enterprise should be operated or managed by someone.") As pointed out above, the plaintiff has failed to allege that any operator participated in the affairs of any enterprise.

jurisdiction over the state law claims and remand the case to state court.

## Conclusion

For the reasons stated above, we dismiss the RICO claims, decline to exercise supplemental jurisdiction over the state law claims, and remand the case to the Circuit Court of Cook County.

DATE: March 8, 2001

ENTER: _____
John F. Grady, United States District Judge